Today is 2017-1526, Philips Lighting v. Wangs Alliance. Mr. Manhus, please begin. Good morning. May it please the court, Rabi Manas for Philips Lighting. I'd like to reserve three minutes for rebuttal. The board's decision finding the 988 patent obvious suffers from two independent defects that mandate reversal. First, the board failed to identify a legally cognizable motivation to combine the references at issue. Although the board correctly recognized that the law requires a particular motivation to combine particular references to reach a particular claim solution, nowhere did the board explain why a skilled artisan would have been motivated to reconfigure the components of Hochstein based on the configuration in Hildebrand, nor has WAC filled the gap in the board's analysis. Neither has identified any advantage or benefit that would have motivated modifying Hochstein. I was wondering, do you need a particularized advantage to substitute in one configuration for another? What if, hypothetically, they were functionally equivalent configurations? Could we then say these are just obvious variants? To choose one or the other? No, I don't think you can say that under KSR and this court's precedence interpreting KSR. Let's think of, I don't know, a simple hypothetical. Excuse me if this is a dumb hypothetical, but let's say in my hypothetical twilight world, the only way to fasten boots on to your foot is using Velcro straps. Okay. You have them around your foot, you have them around your ankle, and that's the way you put your boot on. Then there's this other thing called sneakers that use laces to also fasten the shoe on your foot. Are you saying it wouldn't be obvious to use laces to fasten your boots on and unfasten your boots off? I'm saying that in order for obviousness to be shown, someone who points to a reference that uses Velcro- I guess what I'm wondering is, is it a patentable advance? Is there something patently distinct? Is there a contribution to the shoe art or the boot art to now say, I claim boots using laces rather than the prior art known Velcro straps? Well, at the outset, I want to be clear. I don't think there necessarily has to be a technical advantage, but there has to be some affirmative reason, maybe a design demand or some sort of market pressure, which even if laces functionally do not add a technical advantage over Velcro, there would need to be some affirmative reason which could come in the form of a design demand or market pressure. Why? If something were ridiculously obvious, like adding a fourth prong to a three-prong fork, why does there have to be a design demand or an advantage to doing so? Obviousness does not require improvement. It just is obvious to do so. Well, the reason the motivation requirement exists is to guard against hindsight, and it's precisely when we confront inventions. KSR and this court's precedents tell us that we're not good at determining when things are so simple, and so there's a bedrock requirement to show motivation to combine. I want to point out at the outset that we don't think this is a case where there is no advantage to the configuration. As we've explained in our blue brief and our reply brief, this configuration allowed for an advantageous embodiment, this low voltage power supply, which is represented in figure three of the patent. What do you do with what I think is some case law that recognizes that one of the things that ordinary skilled artisans do is tinker with alternatives that are well known? Well, there is a line of precedent from this court that goes along this obvious-to-try type reasoning, but even there, this court and KSR said that a motivation to combine is required. For example, KSR says explicitly when there is a design need or mark of pressure and there are a finite number of identified predictable solutions, in that instance, the fact that a combination was obvious-to-try might show that it was obvious. KSR has a number of statements of what would be sufficient for obviousness, not as many statements that declare something necessary. Even the statement about a reason to make a combination, I think, says something like, it can be important to identify a reason to do something. Yet, I think, and KSR also says ordinary artisans are not automatons, and then I think we have said what I think is pretty sensible, which is that the ordinary artisan does tinker with well-known alternatives. But there has to be a motivation to tinker. This court's precedent has been clear in a principle that's enunciated in cases like active video, metal craft, and endogenetics, that the mere knowledge of a problem is not enough to satisfy a motivation to combine. Knowledge of a problem and motivation to solve it are entirely different from motivation to combine particular references to reach the particular claimed method. And here, what Wack proposed modifying was Hochstein, which did it differently and said it did it differently for a reason. Right, but another way to look at this is not so much start with Hochstein, you need a motivation to go and look at something else. The filter can go one place or another. Hochstein has it in one place. It's not just in the abstract true that it could go in the other place, but in fact, the board cited a treatise or something, and it's well known that it's often, in fact, put in the other place. And at that point, why isn't that enough for the board to say, well, that's one of the things that would be obvious, unless you came back and said, oh, terrible problems in doing that. And you did, and they said, well, we're not really persuaded. Well, a few points, Your Honor. I don't think that KSR, this court's precedence, licensed a disembodied analysis where we're removed from the prior art. Here, what Wack argued was modifying Hochstein. We are grounded in Hochstein as the reference to be modified, and we have to ask, is there a motivation to modify Hochstein? That is the analysis we're in. Now, secondly, as to this point about it always being done, that's precisely the argument for which there was notice error. That argument was never raised by Wack or the board as an Hochstein. And it was only until the final written decision that that rationale was articulated by the board. And so there was no opportunity to respond to this argument. I would also add, so I think it would be error for this court to consider that rationale. But even if this court were, what those references say actually don't address the issue for which we need to show motivation combined. We need to show motivation combined as to the relative placement of the clamp and the filter. Those references don't speak to that. They simply say the power input is put, sorry, the filter is typically put at the power input. But in Hochstein, the adaptive clamp is at the power input and the filter at the power input. They're both there. The question is, what is the relative position of the two? And I think it's helpful actually to look at Mr. Tingler, Wack's expert's testimony as to this sort of issue. He said on... The treatise that Judge Toronto mentioned, the filter generally comes first in this art. What is the notice error of relying on that? Are you saying that was the treatise not ever mentioned prior to the board's decision? So there were, there's two treatises. I mean, one is this treatise called Fundamentals of Power Electronics. It's a textbook. And then there's an article, which I believe is attached to a Texas Instruments product that the board cited to both. And Fundamentals of Power Electronics, neither one of these was raised by Wack as an affirmative reason to combine. Wack never argued that the fact that it's always done is a motivation to combine. Were they raised? I'm trying to understand. Were these part of the IPR or is it the case that they somehow were just cited out of a blue by the board in its opinion? They are exhibits to the IPR. And what they were cited in is claim construction, construing the term input filter. There was a question about whether it was a means plus function claim. And these references were cited to show what the structure of an input filter is and what it typically does. When were they cited? During the petitioning portion or during the substantive briefing? I believe at both stages, Your Honor. Okay. It was cited by your side, right? Yes. Okay. And was this particular reliance on the idea that you put the filter first on the power input lines, was that something the board found in the text independent of anybody else or did somebody raise that? Indeed. Nobody raised as an affirmative motivation argument that the fact that the filter is typically at the power. So it was the board that found it on its own and the board used that unilaterally on its own? That's right. I thought it was footnote 12 in the board decision that is the specific point that you were contesting as being new. The reliance on putting the filter at the power input lines so as to avoid interference to the components right there in the control circuitry that's in from the power input line rather than trying to protect components out there on the circuitry or on the power input lines from the converter noise. In our reply brief, the WAC raised this in its red brief that this was another motivation, this fundamental point. And so we responded in our reply brief that everything that the board relied on, one of which is this footnote which we addressed in our blue brief, there was no notice of this argument. So we did address it. It's in our reply brief. And I think the reason we didn't address it in the, we didn't see it as a cognizable motivation to combine in the first place even if you get circumvent the notice error problem is because it's conclusory. It doesn't state why a skilled artisan would have done this. And it also doesn't say, it also doesn't address the issue of the precise placement of the clamp and the filter which is the issue here. The issue is not whether they go at the power input. Everybody agrees they go at the power input. The question is which comes first. And these references don't address that. Except that that would be a fact finding about what the nature of a reference teaches a skilled artisan about the location of the filter. That's not something, if you're saying there's a notice problem, the board has now made a fact finding about what this teaches. I certainly can't make a contrary fact finding on appeal. So I don't see why the best case scenario for you, and maybe this is the right answer, is like many other cases, we vacate and remand because there was a notice problem. But I don't see how you get, I don't see how you get a win out of this. Why wouldn't we just vacate and remand because there's a notice problem related to the fundamental of power electronics. I'm not sure there is since not only did you cite it to the board but you cited the exact page and you cited it and told the board to look there for the input filter to understand the definition of it. And so when the board looked there, they said, oh, yeah, and it always comes first. So I'm not sure there's a notice problem since you're the one who cited it to the board and in fact cited them to the exact page that they are citing. The Rovama decision which we cite in our reply brief states quite clearly that the fact that there's evidence somewhere in the record. No, not somewhere in the record. On the exact page you cited to them on the exact element you told them to look at. But under due process and the APA, the question is whether we had noticed that a certain fact or a legal argument was being asserted against us. And there was no noticing. It's not a legal argument. It is a factual argument. The APA speaks to both in due process. What about 386, 387 of the petitioner's reply? Where they block quote the fundamentals of power electronics and talk about how this is where you put the filter at the power input. So they don't actually address, that's not, if you read that, if you read that in full you'll see that that's not an argument about an affirmative motivation to combine. WAC is simply responding to this, to one of Phillips's arguments that there would have been noise, there would have been this problem of noise. And that is an argument, there was no argument that because it's always located at the power input or anything parsing what at the power input means that there's an affirmative motivation to combine. This is responding to a separate issue. And I would like to point the court to appendix 2958 which addresses what at the power input means. Mr. Tingler, WAC's expert, is asked in Hochstein, figure 5, where the clamp comes first and then the filter comes. He's asked, starting at line 16, is the EMI filter at the power input in that circumstance? And he says yes. He says yes. He concedes that that is at the power input. So I think there is this fundamental notice problem, Judge Moore, but even if this court weren't under substantial evidence review, there's still not substantial evidence where you have an explicit concession by the other side's expert that that language isn't actually definitive of the issue. And to address the issue of vacant or remanded... Wait, wait, wait. If the board reads a reference as disclosing the filter first generally, a treatise that says the filter generally comes first, the fact that an expert, even for the other side, says, well, I'm not sure exactly what that says, that's still a fact I can't make an appeal. If there's a notice problem, I have to send it back to the board for them to do all of that. How can I do that on appeal? I disagree. I think that you can say there's not substantial evidence here, but if this court is inclined to vacate, that is another option. The only reason we think that reversal is the better option here is because typically this court vacates when the board itself has made an error, and on a do-over, it could have done better. But here, WAC never made the argument, so WAC shouldn't get a second bite of the apple to make arguments that it failed to make in the first instance. The normal rule is that when a party doesn't raise an argument in front of a tribunal, it forfeits that argument, and that's precisely what happened here. This argument was never raised as an argument for an affirmative motivation to combine. To go back to my analogy about the boots and the sneakers, do you think the PTO in my hypothetical should grant a patent on fastening and unfastening boots using laces? This is a particularized determination. I don't know what priority is being raised against it. I can think of reasons off the top of my head that laces may be better than Velcro, and it is actually a patentable if you are reading in this requirement of some sort of benefit. I could see a benefit to that, and the burden is on... What if there's no benefit? What if it's actually worse because it takes longer to unlace and lace up your boots, but it's functionally the equivalent of Velcro straps for boots? I guess then the question becomes whether the invention as a whole has a benefit and utility. Let's say it has no additional benefit or utility. It's just something else. It's just another way but not as efficient way as Velcro straps. Does the PTO have to give a patent out for the inventor who claims boots using laces? I'm not certain to answer that question. I'm aware of no principle that says that an invention has to be better than the prior art. The utility requirement simply says that it has to have some sort of benefit, and it can be worse than what came before. I don't actually know whether what you're stipulating would be the I want to be clear that's not this case. There is an actual advantage both to the invention as a whole, its efficiency and its simplicity, but to the particular limitation at issue here. I don't think we're at that case. Mr. Maness, you're way beyond your time. I'll restore two minutes of rebuttal, but let's hear from Mr. Radulescu. May it please the court, David Radulescu for your testimony. And clearly, the issue of motivation to combine is a factual inquiry based on substantial evidence. And what the PTAB has done in this case, as they are doing in many other cases, is they are going through the various statements of guidance that KSR is giving in order to do this factual inquiry. And what's important to realize is that in KSR, there is a long paragraph that I want to call to your attention as to the guidance that the PTAB has taken from the Supreme Court in terms of what analysis should do. And it's this guidance that they actually went through step by step, page after page, in terms of a factual basis for the finding that there's a motivation to combine. That's the page or paragraph that bridges page 418. I'll read it briefly, at least a part of it, where it says, often it will be necessary for court to look to interrelated teachings of multiple patents, semi-colon. That's a factual inquiry. That makes actually up a part of the PTAB's analysis in this case. What was the motivation to put the filter first? The motivation to put the filter- Modify Hotchkin's clamp and put the filter first. The motivation to put the filter first is based on a multi-factor analysis. The interrelated teachings of the two patents- I'm sorry, this is a little generic. Can you drill down? What is the specific motivation? Don't just say interrelated teachings of multiple patents. That doesn't help me. It's multiple factors, but the very first determination that they made was that both references are directed to solving the very same narrow problem. Let me try to ... I think maybe the question is not getting through to you. In response to the question, don't say what sources support the motivation. Just state the motivation. Then you can say, here's where we get that motivation. What is the motivation? Where I believe, and I've spent a lot of time going through the PTAB's decision, and I believe what they did was they actually went through the four or five pieces of inquiry that KSR tells them that they should do, and it's at the end of that- I think, at least to my ears, you're still not even understanding the question. The motivation to do this is to- Finish that sentence. The motivation to swap- Is to gain what advantage is to what- How do you finish that sentence? There is no identification of an advantage, and the PTAB went through that. There is no identification of an advantage to swap this. The PTAB realized that persons of ordinary skill in the art also would typically always put this input filter at the front end, and also people of ordinary skill in the art with respect to- When they said that people would often, not always, that generally the filter would come first in these circuits, they cited this treatise for it, the treatise that you didn't cite to them, an argument you didn't make to them. It was cited to them by the opposition in the reply brief, but we've held repeatedly that that fails notice under the APA. There actually are two treatises. The treatise that the PTAB decided forms the basic knowledge that one of ordinary skill in the art would know that you put these things fundamentally at the input. There's no notice issue with respect to that one. What the PTAB also did, because this thing was so typical that you put at the front end, they actually dropped a footnote, and it's the footnote that they're complaining about where the PTAB says, well, you know what? We actually think this is so obvious to put it at the front end. It's typical. If you look at this footnote, it's a source that the patent owner cited that actually gives another explanation for why one would be motivated to put it at the front. Since you just referred to standard practice to put it at the input, there is this testimony at 2958 from your expert, Mr. Tingler, that says putting it at the input includes putting it after the clamp. Yes, depending upon the circumstances. Right, so how would it motivate flipping the order to put it at the input if the unflipped order is already putting it at the input? Right, but the PTAB found that, and the quote is, it's nearly or nearly always required that a filter be added at the power input of a switch. Right, and Mr. Tingler said that includes- Correct. That language, putting it at the power input, includes putting it after the clamp. Correct, and they considered his testimony and they considered the Hildebrand reference. Again, the interrelated teachings, Hildebrand put it at the very front end of that device and they considered the fact that there is some design choice case law. It doesn't fall out of KSR because KSR doesn't use the design choice language. It's the Fed Circuit that uses it, and again, they followed the design choice case law of this court in terms of when it's a situation where this small change, putting the filter at the very front end, solves no stated purpose. In other words, there's nothing in the patented issue, the Phillips patent, that says we have to put this thing in between the two. There was no express reason why in this there's no evidence in this record that there would be some novel or unexpected result of the fact that the input filter is not put directly on the input. In this particular patent, we also pointed out that the claims that were originally submitted to the patent office made no reference to this input filter being coupled between the clamp and the converter, which means there was no express reason why the Phillips patent would want it in its location. It wasn't part of the original claims. It was added after prosecution. The PTAB considered those facts when it decided the design choice issue here is there's just two possibilities. It's in one order or it's flipped. It's not like there's 10 different choices. There's only two, and the PTAB then considered the testimony of Tingler and considered the note of the power electronics textbook saying that it's normally always put at the front end, and they separately concluded under the design choice case law, it's only one factor as to why they concluded there was motivation to combine, that it would be obvious. When I was not able to answer the question of why they did it, what is the motivation to combine, it's because there's multiple grounds. They set forth multiple grounds under the various, as I said, with respect to KSM. I still don't even understand. I still can't answer the question, and you've stood here for eight minutes, that all three of us tried to get you to answer. What is the motivation to combine? If you could say there are multiple, well, one would be power savings, another would be design preference, a third could be commercial manufacturing, whatever. There's always a reason. People can always answer the question why, and you've yet to answer it in the eight minutes you've stood here. Because if I point- You say there are multiple grounds, but I haven't heard a single one. I could say design choice, but my point is- What does that mean? Why is design choice a motivation? There's only two different ways to put this thing in, and the PTAB analyzed this- Where did the PTO find there's only two different ways to put it in? The PTAB found with respect to- I'm not going to be able to cite it right now, but my point is it's in our briefing. It's like motivation to combine is based on a design choice in terms of the design choice case law tells us that this thing should go first. The motivation to combine is also supported by common knowledge. People of ordinary skill in this art know that it's fundamental to put it at the front end of the electronic device. That's the second basis. The third is going to Hildebrand. That's where they did it. That's where they did it to solve exactly the same problem in exactly the same way. Even though it's a fluorescent light, not an LED, but my point is the motivation to combine is based in design choice, common knowledge in terms of people of ordinary skill in the art, what Hildebrand teaches, and then there is this other language in KSR about market demand and demand in the design community. If I could just clarify, I don't think the board just relied on this naked buzz term design choice you keep repeating 20 times. In fact, I think it's dangerous to do that because that just smacks of hindsight. The way I understand what the board said is we know from Hochstein there's one way to configure a filter and this leakage current circuit. We know from Hildebrand there's another known way where the configuration is flipped. Therefore, because it was known in the art to have it element one, element two, or element two, element one, then therefore to a skilled artisan it's a mere design choice whether to select configuration one-two or configuration two-one. That's my understanding. I agree with that. It's not this independent standalone invocation of two words design choice as a basis for finding this claim. Because there's no independent standalone, I can't answer the basic question of what is the motivation combined, fill in the blank. There's not separate independent grounds. It's all these factors that were looked at. The universe of facts that the PTAB considered has been expanded based on KSR. There's a lot different issues that a court can look at to make this factual. It does sound to me like your argument and the board's decision comes down to when there are two documented well-known alternative placements, there is a motivation for a relevant skilled artisan always to choose one or the other. Because you literally have not said anything at all about why somebody would choose that one rather than this one, except it's there. But the decision also says... You may be right that that's the right view of the law on the Velcro laces theory, but it seems to me that's all you have. I have more than that. I'm not resting on that because there's these other facts. There's the knowledge of one or more near skill in the art that they took into account that knows that you generally put it at the front end. So the law is not as... I agree with how I may be coming across, but it's more complicated because there's these other things in this particular case that were considered by the board. It's four or five different lines of argument, different sets of reasoning. And again, the Tingler testimony was credited. Dr. Zane's testimony was not credited throughout. It's a factual inquiry. They've made their determination that as a matter of fact, there is a motivation to combine in a very detailed, thorough opinion that goes on and on that tracks KSR and their paragraph that I said bridges pages 418 of KSR. And as a result, there's substantial evidence to support this factual conclusion. Could you respond to Mr. Monis' concern about notice in terms of the reliance on the textbook Fundamentals of Power Electronics and how the board, in his view, relied on that in a way that didn't provide the patent owner appropriate notice and opportunity to respond to that kind of a point of reasoning? So our first response is that this is not an instance where a new argument... Right. Why not? It's not because it's the same old argument that was raised in the petition. There would be a motivation to swap these two components. That's the argument. And that's the argument from day one. And the question is what facts were relied on to support that argument that factually there'd be a motivation to swap? There are multiple sources of facts to support that argument that are all in the record and this particular... I'm sorry. My specific question is this basis for concluding there's a motivation to combine. That's my specific question. Yeah. I think that given that this fact was in the record put in... I'm sorry. I mean, the Dell case. The Dell case, there was that unnumbered little thing under the computer tray that the board suddenly said, look, it's right there. Everybody agreed it was in the record but nobody had made an argument about it. In one of the new cases, it was, I don't know, Michelson figure 18 or 19 or something. It was right there in the record. It was a central source but nobody had identified that thing. The fact that it's in the record isn't sufficient to meet the obligation to identify a fact that is going to be relied on for the decision and say it's going to be relied on or somebody asks for it to be relied on and here is your opportunity to respond to it. Being in the record isn't enough. Yeah. And I think that what the PTEB did in this instance, they dropped it in a footnote because their position and based on the other reference, the other book that says it's common knowledge to put it at the input, that's what they relied upon. Wait. Am I mistaken? Aren't we all talking about appendix page 44 of the record? Isn't that what we're talking about? The PTEB's reliance on fundamentals of power electronics, which is not in a footnote, it is in the text. There's a footnote that further explains it, but it's in the text and it is the only thing cited there as the fundamental placement of the filter is normally at the front end of the power input and it's the only thing cited. In the footnote? No, in the text. What are you talking about? Page 44. Fundamentals of power electronics is cited in the text as the only thing that supports it. The only thing cited. What am I missing? There's nothing else cited in those sentences. Also a footnote. Page before it, page 43 of the appendix, when it talks about the person of order is not in automation, lacking creativity, there's a cite to another portion of fundamentals of power electronics that it is nearly always required that a filter be added at the input of a switching converter. That was the cite that was put into the reply at the petition stage, arguing for a different reason that factually, with respect to claim construction, this supports the claim construction issue. The point is that the PTEB, when it wrote this decision and concluded that it was a matter of, it was obvious to combine the two, they relied upon this earlier cite at page 43 as a reason why they always put it at the front part of the design and then it's simply a footnote 12 that is being complained about. Just to be clear, they have two complaints. One they knew ahead of time and they put in their blue brief. The second came in their reply brief because they didn't know ahead of time because you didn't assert until you read brief that the existences of this alternative, fundamental alternative, was a basis for a motivation. We're not talking about the footnote now. The issue of motivation to combine was raised in the petition and evidence was put in and not on that particular issue, but the factual record was put in that we were arguing from day one that it would be obvious to combine. There's a lot of different facts that were put in and then the PTEB, of course, relies upon the Fundamentals of Electronics book at page 43 for one proposition. This is not the complaint that Phillips has. They don't have a complaint with respect to the citation at page 43. Their complaint is in the footnote because the PTEB said there's actually a second reason why you'd want to put it and this is the PTEB just overly supporting their opinion with this additional fact that they were the ones that pointed out. I mean, they were the ones in the footnote that said there's actually a second reason. You can talk about the footnote. I'm worried about the text. Nevertheless, confronted with the problem of leakage current and the need for an EMI filter, we are persuaded that the fundamental placement of that filter at the power input as stated in Fundamentals of Electronics and its operation is part of the knowledge possessed by a person of ordinary skill in the art. I think what they're saying is we can look to Fundamentals of Power Electronics as providing a motivation to combine or a motivation to put the filter first because of how it's going to operate there and that's the part where I don't think that there was notice given until your red brief that you were relying on Fundamentals of Power Electronics to supply the motivation to combine. Am I wrong? I believe you're correct in that respect. It's the PTEB that looked at the information from these sources and said this is the knowledge that they're taking into consideration even though we put it into the record early on. You put it in your red brief. You didn't cite Fundamentals of Power Electronics on any motivation to combine point anywhere in your briefing until the red brief as far as I can tell unless I'm wrong and you can point me. I believe you're right on that. Well so that's the problem. The problem is we've got I believe it's 10 separate cases now vacating the PTEB for making a decision and finding a fact on the basis of a reference where nobody argued that at a point where the other side had notice and an opportunity to respond. We've repeatedly said in the PTEB's own rules say reply brief not good enough, oral argument not up at the hearing. We've held that that's right from an APA obligation. It had to have come earlier. Maybe this isn't a reversal for you but maybe it is in fact a vacate and remand so that the agency can give the patentee notice and an opportunity to respond. It's the same. It's the argument was raised from the beginning about the motivation. It's the argument from day one is the same. That some reporters would be motivated to combine and all this stuff is put into the factual record. It makes no sense. You can't say since we always argued one would be motivated to combine therefore any evidence the PTEB relies on at any point that supports a motivation is good enough because they were on notice that we were arguing there was a motivation. That's an absurd argument. Yeah but well it's more particularized because of the swapping argument that was by the expert it would be obvious to swap. You'd be motivated to swap. You'd put it at the front end because of the teaching of Hildebrand. The experts taking all those positions as to why you would want to put it first and then it's the PTEB that also decides that well this is part of the understanding of a person of ordinary skill in the art. It's based upon that paragraph in KSR. Is the board decision affirmable just based on its analysis of Hochstein and well let me finish the sentence. Take two. Is the board decision affirmable just based on the references Hochstein and Hildebrand alone given whatever the board said as to those two references and the expert testimony? I believe so. You could strip out all the reference to the power of electronics and these arguments at page 43 and 44 and you have enough in this factual record to support the factual conclusion where they credited you know Mr. Tingler on the conclusion as well. Okay. Thank you. Two minutes from Mr. Maness. I think it's quite notable here that Mr. Radulescu has admitted that there was no notice of the power input language or exhibit that that argument was never raised as a motivation to by WAC or the board prior to the final written decision. Moreover I want to point out I think there's been some loose wording of what the language actually says. It doesn't say that the filter comes at the front end. It says it comes at the power input and as we pointed out in our appendix at 2958, Mr. Tingler says that that language can mean that the clamp comes first and that's precisely the sort of argument. But it could also mean that the clamp comes second too, right? It could but this court has been clear that motivation is not about what an artisan could do. It's about what they would have been motivated to do. But I guess what I'm saying is the idea that the clamp could come first or second and still have the filter on the input line means that you can have the filter come first or the filter come second in that understanding of where the filter is. Right. Is that fair to say? Yes. Under his testimony I think that is fair to say but I don't think that answers the question. One, we've got this notice issue but two, motivation is about what a skilled artisan would have done with Hochstein. Having Hochstein in front of him, how would he or she have configured a new circuit? Can I ask you this question because we spend rather a lot of time talking about this notice question about the text in 44. So, where is that grievance stated in your blue brief? Well, so the text, so that comes in our reply, in our gray brief. Why shouldn't it have been in your blue brief if the argument now is the board found a motivation by pointing to the treatise in the text on 44. This is just like Newvasive and Dell and the other eight cases where we didn't have adequate notice of that. I think because when we were writing the blue brief we didn't actually see this board statement as identifying a motivation. It was simply addressing the question of could. Could an artist have done it? So, only in the footnote on 14, the footnote 14 does the board actually explain why. So, it's responsive to a translation of what the board actually said into something more. Exactly. Whack is said in its red brief. Now, this is the motivation is that it's always done and it's translating what the board was saying. Once we were aware that was our new argument that's now being raised in our gray brief, we say that's tainted by notice error. And to be clear, none of these exhibits were stated. What are, just curious, in your view, what is the point of pages 43 and 44? What is the board doing there if it's not providing reasoning for why a person of ordinary skill is not an automaton? There would be certain background knowledge that skilled artisan would certainly know. And one of the things they would certainly know is that it's customary to put the filter at the input of the power lines. Yes, I think that the board is addressing the issue of, part of obviousness is could it have been done? And so, I think they're addressing that issue. Now, there's a second part about motivation which I think the board then realizes when it gets to footnote 12 is we also have to identify some sort of motivation for this. Then they identify this high voltage power which is an ironic rationale because it concedes that the clamp actually has to be protected from noise. But that's precisely the sort of argument that the board rejected earlier. So, what about A45 to 47 where the board is playing with Hildebrand and discussing it and integrating it with Hoxton and then making the observation that based on these two references, it looks like there's a finite number of ways to solve this problem of draining off leakage current. One is to put the filter first and then the leakage current circuit second and then the other one is vice versa. So, once again, I think even in the obvious to try context and this context where we talk about finite number of solutions, this court, KSR, still requires a motivation to combine. I think it's also notable that the board... What does that mean? It still requires a motivation to combine. This gets to the question I led with which is the idea that there's a finite number of substitutable components that all are functionally equivalent for the purposes and context of a given technical situation. I mean, what is the concern here for KSR so long as one could say that you would have a predictable outcome or reasonably predictable outcome, you know, that's a separate issue. Why wouldn't all of these different substitutable functionally equivalent options be obvious variants to have and then so we shouldn't be giving out patents on every single little different functionally equivalent way of doing the same thing given that it's known in the art that they're all functionally equivalent. So, once again, I don't think this case is that situation, but I think that to the extent we're in the hypothetical world where we're talking about that situation, the motivation requirement is essential because it deals with hindsight. And so, courts, people are not good with when getting these arguments and telling when something is truly so simple that it would have been obvious or if that's just hindsight bias. So, the motivation to combine requirement is absolute and it safeguards against this analysis that goes too quickly and says these things are obvious. So, what is missing here? What would have been the piece of evidence that you would have wanted to see where you would say, okay, this is obvious, I admit it? Well, KSR says that it's a flexible analysis, so it could come in many different forms. It could be identification of some sort of technical advantage, so the circuit works better because of X, Y, and Z. It saves power. It performs more efficiently. It could have been a purely market-based analysis that the market is gravitating towards circuits of this type or there's some sort of design demand for that. But none of these things were articulated by WACC. So, if the record said this configuration of flipping the circuit and the filter, it works just as good as Hochstein's. Would that be enough for a motivation to combine? I don't think so because that's not an affirmative motivation to do it. Artisan confronted with Hochstein would have no motivation. The winner case and other cases from this court say that motivation is about what on balance is desirable. Okay, so the PTO would have to grant the patent then if the secondary reference said, this configuration of moving the filter first and having the circuit second, that's just as good as Hochstein's. I'm not aware of any case that says that that would constitute obviousness and would satisfy the motivation requirement. There is always a fundamental requirement to show motivation to combine. Once again, that's not this case, and you do not have to decide that question here. This case is about WACC's failure to make arguments based on a legally cognizable motivation. That's one thing I want to point out too. I don't understand. I think this case is kind of that case that Judge Chen was just describing. 1-2-3 or 2-1-3, when 2-1-3 was known in the art, generally used, when there appeared to be no difference in terms of how the elements would work, you argued there'd be differences. You argued there'd be differences with noise issues. You argued there'd be differences with a power factor correction due to some sort of reactivity, and the PTO rejected all of those arguments, making explicit fact findings. 1-2-3 and 2-1-3 were both known in the art. What is the point? You have argued motivation to combine, and I'm very sympathetic to the concept of motivation to combine, but you've argued it in a way that indicates that it has to result in an advantage or an improvement, and that simply can't be so. Obvious variants of things could be less efficient, but they're still obvious variants of things. I don't understand why motivation has to have some improvement or advantageous quality to it, and I feel like that's what I have to swallow to be able to find in favor of you. I don't think that's true. This is purely a case about has WACC induced legally cognizable motivations to combine, and it has not. This is a case about WACC's failure to raise those arguments, and this court doesn't need to decide what would constitute a legally cognizable motivation to say that the things that WACC has induced are not enough. Mr. Radulescu talked about how it was a multi-factor analysis. Why aren't they enough? 2-1-3 was known in the art. In fact, it was generally used. 1-2-3 is what you've got with Hochstein, but with Hildebrand, you've got 2-1-3. It was generally known in the art and generally used. All the reasons that you suggested somebody wouldn't do what it is obvious to do were rejected by the board. Well, it would create noise problems. They were all rejected. Why isn't that enough? These things were all known in the art. We're combining known things that, according to the board, are going to behave in predictable ways. Mr. Radulescu Under Metalcraft, Inogenetics, and those cases, they say that the identification of a problem, such as leakage current, is not enough. You have to show a particular motivation to modify the references at issue. I think it's actually... Ms. Laird Here's the problem. Your example, suppose there were pitchforks, and pitchforks on farms have three prongs and four prongs. I'm the first person to come up with a fork for eating utensil, because, hey, that's great. If it can pick up straw, it can pick up spaghetti. So I have a three prong fork. Well, three and four prong pitchforks were known in the art routinely, and there's lots of art that says there's no difference between a three and a four prong pitchfork. It's all going to function the same way to lift objects. I've created a three prong fork. Are you saying there has to be some motivation to add a fourth prong? It can't just be an obvious variant thereof? Mr. Radulescu I don't think this court needs to address that question, but I don't think the law says that simply because the patent doesn't identify a benefit, that the patent is obvious. If it is truly so trivial, it should be supremely easy to adduce a motivation to combine the three, four fork scenario. I can already think of rationales. Four prongs allow you to pick up more things. Three prongs use less material. These are all very simple things to come up with if the invention truly is so simple. But the fact is that WACC has not identified a single reason why. I think it's interesting that the board on page 34 seems to recognize that the analysis is not sufficient. This analysis of design choice can't even the same problem solved. It says, the inquiry does not end here, however, for even if a person of ordinary skill in the art were motivated by the design needs of solving the leakage current problem, we must determine that if that person, after consulting the teachings in Hoxton and Hildebrand, would apply the teachings as proposed by petitioner. And that's precisely the principle that's in Metalcraft and these other cases, that it is not enough to simply say that it could have been done or that there's this general conclusory problem or general desire to make things better. You have to articulate a specific motivation to combine. And that was not done here. Mr. Radulescu talked about the multi-factor analysis here. I think we have to wrap up. We're way past our time. I thank both counsel for their time. I move that the case is taken under submission.